## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jennifer Seelig,                                                File No. 24-CV-01732 (JMB/ECW)

        Plaintiff,

v.

                                       **ORDER**

Ramsey County, Minnesota; Inmate Services
Corporation; Rogeric Hankins, *individual
capacity*; and Randy Cagle, Jr., *individual
capacity*;

        Defendants.

J. Ashwin Madia and Zane A. Umsted, Madia Law LLC, Minneapolis, MN, for Plaintiff
Jennifer Seelig.

Scott A. Benson, Briol & Benson, PLLC, Minneapolis, MN, for Defendant Ramsey
County, Minnesota.

This matter is before the Court on Defendant Ramsey County, Minnesota's (Ramsey
County) motion to dismiss Plaintiff Jennifer Seelig's claims against it. (Doc. No. 21.) In
2020, Seelig was sexually assaulted by an employee of Defendant Inmate Services
Corporation, a prison-transport provider, while being transported to Ramsey County from
another jurisdiction. In this action, Seelig brings constitutional and tort claims against
Ramsey County, asserting that Ramsey County entered into a services contract with Inmate
Services Corporation even though it was aware of the company's history of abuse
allegations. For the reasons explained below, the Court grants Ramsey County's motion
in part, and denies it in part.

## BACKGROUND

### A.    Contract Between Ramsey County and ISC

Defendant Inmate Services Corporation (ISC) is a private company that contracts with jurisdictions across the country to provide private prison transport services. (Doc. No. 16 [hereinafter, "FAC"] ¶¶ 21, 23, 31, 32.)  ISC transports wanted individuals to the jurisdictions in which they are wanted. (*Id.* ¶¶ 21, 23.)  Its employees are not law-enforcement officers. (*See id.* ¶¶ 26, 27.)

In 2018, Ramsey County sought to contract with a prison-transport provider. (*Id.* ¶¶ 32, 33.)  At the time, Ramsey County operated under a policy of approving service contracts to the lowest bidder that met its specifications. (*Id.* ¶ 40; Doc. No. 26-1 at 4.[1])  Seelig alleges that, in this same time period, abuses against detainees in the private prison-transport industry were "heavily publicized" and Ramsey County had knowledge of at least one female detainee who was sexually assaulted en route to Ramsey County.[2] (FAC ¶¶ 34–37; *see also* Doc. No. 16-2; Doc. No. 16-3; Doc. No. 16-4; Doc. No. 16-5; Doc. No. 16-6; Doc. No. 16-7.)  According to the Amended Complaint, ISC's track record was especially poor—in 2018, several jurisdictions had decided to end their contracts with ISC because of reports of ISC's employees violating detainees' rights. (FAC ¶ 38.)  Nevertheless,

---

[1] This document is an August 17, 2010 Resolution of the Board of Ramsey County Commissioners. (*See* Doc. No. 26-1.)  It is not referenced in or otherwise embraced by the FAC.  However, the Court may take judicial notice of public records when deciding a motion to dismiss. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

[2] The perpetrator of this assault did not work for ISC. (*Id.* ¶ 34.)

Ramsey County contracted with ISC because "it was the lowest bidder." (*Id.* ¶ 40.) Ramsey County could have—but allegedly did not—factor in ISC's publicly aired history of detainee mistreatment before entering into the contract. (*Id.* ¶ 39.)

Then, during the term of the contract and despite the publicized abuses (including sexual assault) in the prison-transport industry, Ramsey County did not inquire into ISC's compliance with certain "precautionary measures" (some required by contract, others by law), such as requiring the completion of background checks and training ISC employees on detainees' rights. (*Id.* ¶¶ 40–42.) For example: even though ISC had told Ramsey County that its employees had taken a forty-hour training program, ISC actually provided a training that lasted less than an hour (*id.* ¶ 42); Ramsey County had a stated "zero-tolerance standard against sexual assault" but nevertheless did nothing to supervise ISC employees' interactions with detainees (*id.* ¶ 44); Ramsey County took no action to ensure that ISC complied with Minnesota Statutes section 631.412, which requires a same-sex escort for inmates during transport or, when not possible, that the transport vehicle have audio and video recording (*id.* ¶¶ 45–46); and Ramsey County took no action to ensure ISC's compliance with Minnesota Statutes section 326.32, *et seq.*, which requires private prison-transport companies to be licensed as "protective agents" by the State Board of Private Detective and Protective Agent Services.[3] (*See id.* ¶ 48; Doc. No. 16-8 at 5–10.) The ISC-Ramsey County contract was still in effect in March 2020, when the events giving rise to this lawsuit (set forth below) occurred. (*See, e.g.*, FAC ¶¶ 51–52.)

_____

[3] ISC has never held such a license. (FAC ¶ 49.)

### B.    The Sexual Assault by Defendant Hankins, an ISC Driver

In late March 2020, an ISC vehicle without audio- or video-recording capabilities picked up Seelig in Washington state to transport her to Ramsey County. (*Id.* ¶¶ 51–53.) The vehicle's drivers were two males, one of whom was Defendant Rogeric Hankins. (*Id.*) At some point in the weeks-long journey to Minnesota, Seelig was the only detainee in the vehicle. (*Id.* ¶ 54.) Somewhere in Missouri, while his colleague was asleep, Hankins removed Seelig from the vehicle and raped her in the bathroom of a rest stop. (*Id.* ¶¶ 56–59.) He attempted to sexually assault her again several hours later. (*Id.* ¶¶ 60–71.)

Upon arrival at the Ramsey County Detention Center, Seelig reported the assaults. (*Id.* ¶¶ 75–76.) A subsequent sexual-assault exam confirmed Seelig's report.[4] (*Id.* ¶ 76.) Hankins was criminally prosecuted and pleaded guilty to a felony violation of "Deprivation of Rights Under Color of Law;" he is currently serving a 108-month prison sentence. (*Id.* ¶¶ 77–78 (citing *United States v. Hankins*, 22-CR-3125 (MDH) (W.D. Mo. 2022)).)

### C.    This Action

On May 13, 2024, Seelig filed this lawsuit. (Doc. No. 1.) In her seven-count Amended Complaint (FAC), she brings three claims against Ramsey County. Count 1 is a claim arising under *Monnell v. Department of Social Services*, 436 U.S. 658 (1978), in

---

[4] Several months before Seelig's assault, another female detainee bound for Ramsey County, Danielle Sivels, was terrorized and sexually assaulted by an ISC driver. (Doc. No. 16-6 at 1–3.) Sivels did not immediately report the misconduct, and Ramsey County did not have knowledge of these allegations at any time before Seelig's encounter with ISC. Sivels is currently a plaintiff in a civil suit pending in this District with claims against ISC and Ramsey County. *See Sivels v. Ramsey Cnty.*, No. 23-CV-0894 (DWF/TNL), 2024 WL 3823012 (D. Minn. Aug. 14, 2024).

which Seelig alleges that Ramsey County had an unofficial custom of indifference to misconduct that ultimately led to the violation of Seelig's constitutional rights. (FAC ¶¶ 96–112.) Count 2 is also a *Monnell* claim; in it, Seelig alleges that Ramsey County failed to supervise ISC's compliance with contractual and statutory detainee-safeguarding requirements. (*Id.* ¶¶ 113–20.) In Count 7, Seelig alleges that Ramsey County negligently selected ISC as an independent contractor.[5] (*Id.* ¶¶ 158–71.) Seelig also seeks an award of punitive damages from Ramsey County on Counts 1 and 2. (*See id.* ¶¶ 112, 120.)

## DISCUSSION

Ramsey County now moves to dismiss the three claims against it in the FAC (Counts 1, 2, and 7) and to dismiss Seelig's request for punitive damages. (Doc. No. 21.) As discussed below, the Court concludes that the FAC includes sufficient factual allegations regarding each of the three challenged claims to survive the motion. However, the Court grants the motion with respect to Seelig's request for punitive damages.

Initially, the Court notes the applicable standard. On a motion to dismiss under Rule 12(b)(6), courts consider all facts alleged in the complaint to be true and then determine whether the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading has facial plausibility when its factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[5] The Minnesota Supreme Court recently recognized negligent selection of an independent contractor as a cause of action under state law. *See Alonzo v. Menholt*, 9 N.W.3d 148 (Minn. 2024).

alleged." *Iqbal*, 556 U.S. at 678.  In this analysis, courts construe the allegations and draws inferences from them in the light most favorable to the plaintiff.  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018).  However, courts will not give the plaintiff the benefit of unreasonable inferences, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010), and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). All told, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## I.   *MONELL* CLAIMS

Ramsey County first argues that the allegations in Counts 1 and 2, Seelig's *Monell* claims, fail to state claims.  (*See* Doc. No. 23 at 6–15.)  The Court disagrees.  Because the FAC alleges sufficient facts to support an unofficial-custom claim and a failure-to-supervise claim under *Monell*, the Court denies Ramsey County's motion.  However, to the extent that portions of the FAC can be construed as separately asserting an official-policy *Monell* claim, the Court grants Ramsey County's motion.

As a threshold matter, a municipality may be liable under section 1983 if it, "under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983; *see*

6

*also Monnell*, 436 U.S. at 690–91.  Municipal liability[6] exists "only where the municipality itself[7] causes the constitutional violation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Municipalities "are not vicariously liable under § 1983 for their employees' actions."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Rather, a municipality's "liability for a constitutional violation attaches only if the violation resulted from [1] an official municipal policy, [2] an unofficial custom, or [3] a deliberately indifferent failure to train or supervise an official or employee."  *Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 840 (D. Minn. 2021).

Seelig asserts *Monnell* liability against Ramsey County as follows: in Count 1, she asserts that Ramsey County "adopted a policy of indifference" to ISC's "pattern of constitutional violations," which led to the sexual assault while in ISC's custody (FAC ¶ 109); and, in Count 2, she asserts that Ramsey County showed deliberate indifference to ISC's failure to train employees, which led to the sexual assault.  (*Id.* ¶ 115.)

---

[6] Both parties appear to accept that the concept of "municipal" liability applies to counties like Ramsey County, not just to cities.  *E.g.*, *Sivels v. Ramsey Cnty.*, 23-CV-0894 (DWF/TNL), Doc. No. 1 ¶¶ 25–40 (D. Minn. Apr. 10, 2023) (applying municipality analysis of *Monnell* claim to county); *see also Royster v. Nichols*, 698 F.3d 681, 692–93 (8th Cir. 2012) (applying municipality analysis to private security firm, or state actor).

[7] Ramsey County does not assert that it is not liable under *Monnell* for the actions of a third party, ISC.  (*See generally* Doc. No. 23.)  Relatedly, Seelig does not describe how, if at all, Ramsey County should be liable under such a theory (for example, she does not allege that ISC was an agent of Ramsey County).  (*See generally* FAC.)

### A.    Count 1 – "Policy of Indifference"

In Count 1, Seelig alleges that the sexual assault and attempted second sexual assault occurred because Ramsey County "adopted a policy of indifference" to ISC's "pattern of constitutional violations." (*Id.* ¶ 109.) She does not specify whether this claim implicates the official-policy or unofficial-custom analysis under *Monnell*.[8] The Court therefore undertakes an analysis of both.

### 1.    *Official-Policy Variety of* Monnell *Liability*

Ramsey County argues that Seelig has not pleaded enough in the FAC to make out an official-policy claim. (Doc. No. 23 at 8–9.) An official policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). An official policy is "often but not always committed to writing" and is "intended to, and do[es], establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986).

---

[8] In her opposition to this motion, Seelig takes an agnostic position whether the Court characterizes her claim as asserting the existence of an "official policy" or an "unofficial custom." (Doc. No. 28 at 9 & n.2 ("Seelig is indifferent to the label the Court attaches to her claim.").) In Seelig's view, the U.S. Supreme Court's decision in *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397 (1997), creates a *Monnell* theory of liability based on a defendant's "deliberate indifference" to the result of its actions. (Doc. No. 28 at 9 n.2 (citing *Brown*, 520 U.S. at 407).) However, *Brown* still requires the plaintiff to articulate that his or her constitutional injury was caused by a municipality's official policy or unofficial custom. *See Brown*, 520 U.S. at 397 ("[T]he plaintiff must identify a municipal 'policy' or 'custom' that caused the[ir] injury.")).

Ramsey County is right: Seelig has not pleaded enough in the FAC to permit any reasonable inference that a specific municipal official committed its alleged "policy of indifference" to writing or intended to "establish fixed plans of action to be followed under similar circumstances consistently over time." (*See* FAC ¶¶ 96–112.)  She has not alleged which municipal official made the choice to engage with ISC, much less the municipal official with relevant final authority.  Thus, to the extent Count 1 is premised on an official-policy theory of liability under *Monnell*, the Court dismisses it.

### 2.   *Unofficial-Custom Variety of* Monnell *Liability*

Ramsey County also argues that Seelig has not pleaded enough in the FAC to make out an unofficial-custom claim under *Monnell*.  (Doc. No. 23 at 9–15.)  A custom is a "practice [that] is so widespread as to have the force of law."  *Brown*, 520 U.S. at 404.  "The Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the *Iqbal* standard," however, "it has held that isolated incidents do not suffice."  *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (citing cases).  To establish *Monnell* liability based on a pattern of unconstitutional misconduct, a party must show the following three components:

> (1) The existence of a continuing, widespread persistent pattern of unconstitutional misconduct by the government entity's employees;

> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.*, proof that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quotation omitted).  As discussed below, Seelig has alleged sufficient facts to support each factor.

The Court first asks whether Seelig plausibly alleges the existence of a persistent pattern of unconstitutional misconduct.  *Id*.  Seelig alleges that Ramsey County had knowledge of one incident of sexual assault by its pre-ISC prison-transport contractor against a detainee and additional knowledge other such abuses in the prison-transport industry.  (FAC ¶¶ 34–37, 81, 87.)  Ramsey County argues that this is not enough to establish a "persistent pattern of unconstitutional misconduct."  (Doc. No. 23 at 12–14 (citing *Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996).)  However, *Fowler* did not involve a motion to dismiss, and Seelig is not required plead the full scope of the unofficial custom in her FAC: "[e]ven if a plaintiff cannot identify the full scope of an alleged custom or policy, the key to surviving dismissal is that the complaint must allege facts which would support the existence of an unconstitutional policy or custom."  *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015) (internal quotations and citation).  Contrary to Ramsey County's reliance on *Fowler*, allegations of two incidents of misconduct can support unofficial-custom *Monell* liability at the pleading stage.  *Sagehorn*, 122 F. Supp. 3d at 867; *see also Sivels*, 2024 WL 3823012, at *3–4 (same).

The Court next asks whether Seelig plausibly alleges that Ramsey County acted with deliberate indifference after notice.  *Ware*, 150 F.3d at 880.  Seelig alleges that Ramsey County had "actual knowledge" of the sexual assault of the Ramsey County detainee by the pre-ISC contractor.  (FAC ¶ 35.)  Further, Seelig argues that Ramsey County knew or had reason to know that ISC employees had a history of misconduct,

10

specifically sexual abuse—she alleges that there were lawsuits that were widely publicized by news outlets across the country, including the *New York Times*.[9]  (*Id.* ¶¶ 26, 37, 38, 82, 85, 86, 93; Doc. No. 16-2.)  Whether this is enough to establish Ramsey County's notice of ISC's unconstitutional misconduct will be borne out in discovery.  But at this stage, the allegations in the FAC, taken as a whole, plausibly allege that Ramsey County had notice of issues of unconstitutional abuses by transport carriers generally and by ISC, but entered into a contract without vetting its prison-contract bidders on any criteria save for the amount of their bid.

Finally, the Court asks whether Seelig plausibly alleges that Ramsey County's custom of indifference was the "moving force" behind her injury.  *Ware*, 150 F.3d at 880.  Seelig alleges that, despite its knowledge, Ramsey County chose not to take precautionary action and was therefore deliberately indifferent to ISC's misconduct.  For example, Ramsey County did not examine the background of the transportation contractors, ensure compliance with state laws designed to protect detainees[10] (including that vehicles be

---

[9] These lawsuits include the following: *Peters v. Inmate Servs. Corp.*, 18-CV-2959-JG, Doc. No. 1 (N.D. Ohio Aug. 8, 2018) (FAC ¶ 37(a)); *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902 (8th Cir. 2020) (FAC ¶ 37(a)); *Jackson v. Inmate Servs. Corp.*, 17-CV-1277, Doc. No. 1 (D. Ariz. Apr. 28, 2017) (FAC ¶ 37(b)); *Metcalf v. Inmate Servs. Corp.*, 15-CV-0139, Doc. No. 1 (E.D. Ark. May 19, 2019) (FAC ¶ 37(e)); *Arenz v. Inmate Servs. Corp.*,19-CV-0949-JPS, 2022 WL 93509 (E.D. Wis. Jan. 10, 2022).  (FAC ¶ 86.)

[10] Ramsey County argues that "alleged violations of state laws do not by themselves state a claim under 42. U.S.C. § 1983" because "[s]ection 1983 guards and vindicates federal rights alone."  (Doc. No. 23 at 14 (citing *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 965 (8th Cir. 2015).)  Seelig, however, does not seek to state a claim for violation of state laws; instead, she claims her constitutional rights were violated and references state laws to demonstrate the degree of Ramsey County's alleged indifference to detainee safety.

equipped with recording technology when a female detainee is alone with male custodians), institute its own safeguards to further prevent abuse, or otherwise monitor their contractors. This is enough to plausibly allege that Ramsey County was deliberately indifferent and that its indifference was a "moving force" behind the violation, because it enabled Hankins to assault Seelig.

Seelig's allegations in support of her unofficial-custom claim under *Monnell* are sufficient to survive Ramsey County's motion to dismiss.

**B.    Count 2 – Failure-to-Supervise Variety of *Monnell* Liability**

Next, Ramsey County argues that Seelig's failure-to-supervise claim under *Monnell* should also fail.  Again, the Court disagrees and denies the motion.

To establish a claim for failure-to-supervise under *Monnell*, Seelig is required to plausibly allege the following four elements:

> (1) the supervisor was on notice of a pattern of unconstitutional acts committed by subordinates; (2) the supervisor was deliberately indifferent to or tacitly authorized the pattern of unconstitutional acts; (3) the supervisor failed to take sufficient remedial action to address the pattern of unconstitutional acts; and (4) the supervisor's failure to remedy the pattern of unconstitutional acts proximately caused the plaintiff's injury.

*Cole v. Does*, 571 F. Supp. 3d 1033, 1044 (D. Minn. 2021) (internal quotations and citations omitted).  As discussed *supra* Section I.a.2, the FAC includes sufficient allegations to satisfy the first two factors.

Ramsey County points out that the Eighth Circuit has held that there is not an obvious need to train officers not to sexually assault detainees because the illegality of such conduct is obvious.  (Doc. No. 23 at 17 (quoting *Parrish v. Ball*, 594 F.3d 993, 999 (8th

Cir. 2010).)  Here, however, Seelig alleges more than just a failure to train officers not to sexually assault detainees in their care.  Seelig also alleges that Ramsey County did not take sufficient remedial action after learning about the abuses in the prison-transportation industry generally, and by ISC specifically, and turned a blind eye to ISC's failure to train its employees, conduct background checks, become licensed as required by state law, or conduct proper monitoring of compliance with other precautionary laws (such as Minnesota Statutes section 631.412, which requires prison-transport providers to provide a female custodian or a van equipped with recording devices when a female is being transported, and Minnesota Statutes section 326.3381, which required ISC contractors to be licensed as protective agents).  (*See* FAC ¶¶ 34–38, 44–50, 115–20.)  *See Sivels*, 2024 WL 3823012, at *4–5 (denying Ramsey County's motion to dismiss assaulted inmate's failure-to-supervise claim on grounds that inmate alleged that Ramsey County, among other things, did not ensure prison-contractor's compliance with state laws designed to protect inmates).  Seelig alleges that, when she was assaulted by Hankins, Ramsey County knew that ISC was out of compliance with such policies and laws.

Just as in *Sivels*, these allegations are sufficient to plausibly allege a failure-to-supervise claim.  *See Sivels*, 2024 WL 3823012, at *5 (concluding that it was sufficient to allege that "the county knew that wrongful acts similar to those alleged in this case had previously occurred and, deliberately or indifferently, took no remedial action, although it was in the county's power to prevent the commission of such wrongful acts") (quoting *Harden ex rel. Est. of Travis v. St. Louis Cnty.*, No. 04-CV-0602, 2005 WL 1661505, at *3

(E.D. Mo. July 5, 2005).  Therefore, the Court denies Ramsey County's motion to dismiss Count 2.

## II.    NEGLIGENT SELECTION OF AN INDEPENDENT CONTRACTOR

Ramsey County next argues that Count 7, a claim for negligent selection of an independent contractor, also fails.  (Doc. No. 23 at 18–20.)  Here, Seelig alleges that Ramsey County did not use reasonable care when selecting ISC as a contractor because it either failed to investigate ISC's practices and track record or ignored that ISC was not fit to operate in Minnesota (i.e., it did not have required licensing or required recording equipment in the vehicles).  (FAC ¶¶ 162, 166–68.)  Seelig alleges that this negligence caused her to be a victim of a sexual assault by an ISC driver.  (*Id.* ¶ 164.)  For its part, Ramsey County asserts that it is immune from this claim under Minnesota Statutes section 466.03, subdivision 6.  (Doc. No. 23 at 18–19.)  Because Ramsey County has not established that its decision to contract with ISC falls within the scope of statutory immunity, and because the allegations in the FAC are sufficient to state a claim of negligent selection of an independent contractor, the Court denies the motion.

### A.    Statutory Immunity

In Minnesota, "every municipality[11] is subject to liability for its torts and those of its officers, employees, agents acting within the scope of their employment or duties." Minn. Stat. § 466.02.  However, a municipality is "immune from liability" from "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary

---

[11] The definition of "municipality" includes "any county."  Minn. Stat. § 466.01, subd. 1.

function or duty, whether or not the discretion is abused." *Id.* § 466.03, subd. 6.  The statutory immunity in section 466.03, subdivision 6, applies to decisions requiring an exercise of discretion, "whether or not the discretion is abused." *See id.*

When analyzing whether immunity under section 466.03, subdivision 6, applies, the first step is to identify the conduct being challenged.  *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 504 (Minn. 2006).  Next, courts examine whether the conduct involved public-policy-based objectives (immune), or "operational" decisions (not immune).  *Id.* The Minnesota Supreme advises, that when determining whether challenged municipal conduct involved a policy-level or operational decision, court should keep these principles in mind:

> (1) the presumption in every case that the government is liable for its tortious conduct . . . ; (2) exceptions are interpreted narrowly so as not to preclude an injured Minnesotan from recovering for injuries caused by a municipality's tortious conduct unless *necessary* to avoid judicial branch interference with policymaking activities best left to the legislative or executive branch; and (3) our recognition that many government decisions do not involve weighing competing policy considerations.

*Doe 601 v. Best Academy*, __ N.W.3d __, 2025 WL 621284, at *9 (Minn. 2025) (footnotes omitted) (emphasis in original).  As the party asserting immunity, Ramsey County has the burden "to prove that it is immune under the discretionary function exception." *Nusbaum v. Blue Earth Cnty.*, 422 N.W.2d 713, 722 n.6 (Minn. 1988).

Policy making "involve[es] social, political, or economic considerations." *S.W. v. Spring Lake Park Sch. Dist. No. 16*, 580 N.W.2d 19, 22 (Minn. 1998).  Stated otherwise, such planning-level decisions "require the balancing of policy objectives." *Nusbaum*, 422

N.W.2d at 722. Decisions may be operational "even when they involve professional judgment or the application of scientific and technical skills in carrying out established policy, as long as the decision does not involve a balancing of objectives in setting a policy." *Jepsen ex rel. Dean v. Cnty. of Pope*, 966 N.W.2d 472, 488–89 (Minn. 2021). The distinction between planning and operational decisions "should not be used in a conclusory manner." *Id.* at 722. Instead, "it should be used as a tool for focusing attention on the central inquiry of whether the challenged government conduct involved a balancing of policy objectives." *Id.*

Examples of policy-level activity for which a municipality is immune include: a county's decision not to install guardrails on a bridge, which required consideration of federal regulations and funding availability, *Fisher v. Cnty. of Rock*, 596 N.W.2d 646, 653 (Minn. 1999); the decision of transit authority, after weighing safety objectives against available resources, not to have certain security measures on city busses, *Watson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 412–14 (Minn. 1996); and a city's placement of signage on county roads because such decision included safety issues, financial burdens, and possible legal consequences. *Steinke v. City of Andover*, 525 N.W.2d 173, 176 (Minn. 1994).

On the other hand, examples of non-immune, operational-level claims include: a claim by an injured student who sued for a defendant's failure to implement a student-safety policy, *S.W.*, 580 N.W.2d at 22 ("[W]e do not believe that the legislature intended to immunize government entities for their failure to put policies in place."); a state engineer's failure to recommend posting of warning signs because there was no evidence

showing that failure was based on policy considerations, *Nusbaum*, 422 N.W.2d at 723; and an inmate's claim against the county for injuries sustained due to poor design of jail recreation yard when it was determined that the yard's design shortcomings were a result of the absence of "conscious design by" the County, not of social, political, or economic considerations. *Gillespie v. Ramsey Cnty.*, No. A07-0378, 2008 WL 668220, at *3–4 (Minn. App. Mar. 11, 2008).

Here, Ramsey County argues that it is immune from Seelig's negligent-selection claim because a municipality's hiring, retention, and supervision decisions are based on policy-level activity. The Minnesota Supreme Court recently considered whether "a hiring decision categorically and necessarily [is] a policy-level decision involving weighing competing economic, social, political, and financial considerations for purposes of the discretionary-function exception to municipal tort liability." *Doe 601*, __ N.W.3d at __, 2025 WL 621284, at *5. The court "conclude[d] the answer to the question is 'No.'" *Id.* at *6, *11 ("[W]e have never held that the broad category of 'hiring decisions' is always the result of weighing competing economic, social, political, and financial considerations rather than a day-to-day operation decision."). The holding reversed the Minnesota Court of Appeals and permitted a student's negligence claim to proceed against a school for hiring a coach who sexually assaulted the student. *Id.* at *2–4. The coach had previously been the subject of sexual assault allegations, but the school hired the coach without contacting the coach's former employer or the youth organization at which he volunteered. *Id.* The Supreme Court concluded that the school had not carried its burden to show that

17

its decision to hire the coach without a more thorough investigation involved "weighing competing social, political, or economic considerations." *Id.* at *14–15.

In light of *Doe 601*, the Court rejects Ramsey County's argument that hiring decisions are protected under section 466.03.   Further, the argument is internally inconsistent.  On one hand, Ramsey County characterizes its decision to contract with ISC as a policy-based, discretionary decision.  On the other hand, however, Ramsey County asserts that it awarded the service contract to ISC pursuant to a mandate that stripped it of discretionary decision-making: a mandate to award the contract to the lowest bidder.  (FAC ¶ 40; Doc. No. 23 at 8–9.)  Ramsey County concedes that "award[ing] contracts such as the one with Defendant ISC to the lowest qualified bidder was a policy of Ramsey County at the time" and that it maintained such a policy to "allow for a more effective and efficient procurement and contracting process, clarify roles and responsibilities, integrate industry best practices, reduce confusion as to proper procedures, and provide greater transparency to County offices, staff and vendors."  (Doc. No. 23 at 8–9 (citing Doc. No. 24-1).)

Based on the fact-specific nature of statutory immunity,[12] the holding in *Doe 601*, and Ramsey County's concession that it acted pursuant to a mandate to award contracts to the lowest bidder, the Court concludes that Ramsey County has not shown that it is entitled to immunity under section 466.03 at this stage.[13]

---

[12] Discretionary immunity protects the government "*only when it can produce evidence that its conduct was of a policy-making nature.*"  *Olmanson v. Le Sueur Cnty.*, 673 N.W.2d 506, 514 (Minn. App. 2004) (emphasis in original).

[13] In its response to Seelig's Notice of Supplemental Authority, Ramsey County argues, for the first time, that the Ramsey County Commissioner's resolution to award contracts to

18

B.    **Liability**

Ramsey County alternatively argues that the allegations in the FAC fail to state a claim of negligent selection of an independent contractor. The Court disagrees with this characterization of the factual allegations in the FAC, and concludes that the factual statements in the FAC allege each element of the claim at issue.

To prevail on a claim of negligent-selection-of-an-independent-contractor, Seelig must show that "the principal," i.e., Ramsey County, "did not exercise reasonable care" when it selected ISC and that this failure proximately caused her harm. *Alonzo v. Menholt*, 9 N.W.3d 148, 157–59 (Minn. 2024) (recognizing negligent selection of an independent contractor as a cognizable cause of action). The degree of care required "will vary depending on the circumstances, but is lower when the work at issue requires little skill and imposes little risk," whereas "a higher duty is imposed when the work requires special training or skill to perform properly and imposes a high risk of danger if done improperly." *Id.* at 158. Ultimately, the alleged harm must "result from some quality in the contractor which made it negligent for the employer to entrust the work to them." *Id.* at 159 (quotation

---

the lowest bidder is itself the policy-level decision that entitles it to section 466.03 immunity. (Doc. No. 35.) Assuming without deciding this argument is properly before the Court, the Court rejects it. As previously noted, when analyzing whether section 466.03 immunity applies, the first step is to identify the conduct being challenged. *Schroeder*, 708 N.W.2d at 504. Here, the challenged conduct is Ramsey County's decision to award a contract *specifically to ISC*, not its decision to pass a broad, non-specific resolution relating to any and all procurement contracts and leases into which Ramsey County may need to enter, not just those for its prison transport needs. (*See* Doc. No. 26-1.) Further, the Resolution itself provides that contracts are to be awarded to a vendor who "is the low bidder *meeting specifications*." (Doc. No. 26-1 at 4 (emphasis added).) The determination whether ISC "me[t] specifications" is an operational-level decision akin to the school-defendant's decision to hire the coach in *Doe 601*.

omitted).  Thus, a principal is liable only if they "could have reasonably anticipated the harm."  *Id.*  Here, Ramsey County is subject to the heightened standard of care given the inherently high risk of danger in transporting and caring for detainees.  (FAC ¶ 163.)  Indeed, "[m]ore dangerous work requires greater care than work that, if improperly done, would result in 'a comparatively trivial injury.'"  *Alonzo*, 9 N.W.3d at 158 (citing Restatement (Second) of Torts § 411, cmt. c).

Seelig has pleaded enough in the FAC to state a claim for negligent selection of an independent contractor.  She alleges that the applicable degree of care required Ramsey County to investigate ISC before entering into a contract with it, but Ramsey County did not do so.  (FAC ¶¶ 39, 162–163.)  She alleges that Ramsey County could have reasonably anticipated the harm to prisoners by engaging with ISC, which was not properly licensed and had a publicized poor track record (including news articles and publicly filed lawsuits) for abusing detained individuals.  (*Id.* ¶¶ 35–38, 80–89, 162, 166.)  Count 7 survives Ramsey County's motion.

## III.    PUNITIVE DAMAGES

Finally, Ramsey County argues that the Court should dismiss Seelig's claim for punitive damages for the claims arising under 42 U.S.C. § 1983.  (Doc. No. 23 at 18; *see also* FAC ¶¶ 112, 120.)  Ramsey County argues that it is not subject to punitive damages arising from violations of section 1983.  (*Id.*)  Seelig offered no response.  (*See generally* Doc. No. 28.)

Ramsey County cites to *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981) for the proposition that a municipality is immune from punitive-damage awards on section

1983 claims. *See id.* at 271. Although Ramsey County provides no direct authority to justify the extension of *City of Newport*, which involved a municipality, not a county, *see Smith v. Copeland*, 892 F. Supp. 1218, 1225 (E.D. Mo. 1995) (rejecting a county's summary assertion that *City of Newport* barred a punitive damages claim against it; noting that the holding of *City of Newport* concerned municipalities, not counties), *aff'd*, 87 F.3d 265 (8th Cir. 1996), several courts within the Eighth Circuit have extended *City of Newport* to counties. *See, e.g.*, *Stewart v. Washburn*, No. 4:21-CV-00735-DGK, 2022 WL 2070905, at *6 (W.D. Mo. June 8, 2022) (relying on *City of Newport* and dismissing a punitive damages claim against a county defendant); *Kelly v. Clay Cnty., Missouri*, No. 12-0778-CV-W-BP, 2012 WL 12904711, at *1 (W.D. Mo. Nov. 2, 2012) (same); *Bruhn v. Foley*, 824 F. Supp. 1345, 1358 (D. Neb. 1993) ("Punitive damages are not available against municipalities or counties." (citing *City of Newport*)). In addition, courts in other circuits have also generally found that *City of Newport* bars punitive damages claims against counties. *See, e.g.*, *Jennings v. Clinton Cnty.*, No. 1:22-CV-00019, 2023 WL 213900, at *4 (M.D. Pa. Jan. 17, 2023); *Forbes v. City of Rochester*, 612 F. Supp. 3d 159, 172 (W.D.N.Y. 2020); *Gambrel v. Walker Cnty.*, No. Civ.-H-18-2868, 2019 WL 1057405, at *3 (S.D. Tex. Mar. 6, 2019); *Lewis v. Bd. of Sedgwick Cnty. Comm'rs*, 140 F. Supp. 2d 1125, 1140 (D. Kan. 2001), *aff'd sub nom. Lewis v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, 56 F. App'x 873 (10th Cir. 2003); *Smith v. Shelby Cnty.*, 721 F. Supp. 2d 712, 722 n.47 (W.D. Tenn. 2010); *Scott v. Estes*, 60 F. Supp. 2d 1260, 1274 (M.D. Ala. 1999) ("[T]he United States Supreme Court has held that a municipality is immune from punitive damages under 42 U.S.C. § 1983, and the reasoning behind this holding requires that the

holding be extended to counties as well." (internal citation and quotation marks omitted)).

Given this authority, and the absence of Seelig's response to Ramsey County's argument, the Court concludes that punitive damages are not available on Counts 1 and 2.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Defendant Ramsey County, Minnesota's motion to dismiss (Doc. No. 21) is GRANTED IN PART and DENIED IN PART:

1. Defendant's motion to dismiss Plaintiff Jennifer Seelig's request for punitive damages on Counts 1 and 2 of the Amended Complaint is GRANTED, and the claim for punitive damages is DISMISSED WITHOUT PREJUDICE.

2. Defendant's motion to dismiss Counts 1, 2, and 7 of the Amended Complaint is DENIED.


Dated:  March 17, 2025                    /s/ *Jeffrey M. Bryan*
                                          Judge Jeffrey M. Bryan
                                          United States District Court